IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREE L. BOWERS, | ) | CASE NO. 4:10CV2670 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff, Andree L. Bowers ("Bowers"), seeks judicial review of the final decision of Defendant, Commissioner of Social Security, ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act), 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI') under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the final decision of the Commissioner should be AFFIRMED.

## I.  Procedural History

Bowers filed applications for DIB and SSI on August 21, 2007 for right foot, right ankle, and hip problems, alleging an onset date of August 15, 2007.[1]  Tr. 129, 130–32.  The state agency denied Bowers' claims initially in December 2007 (Tr. 78-83) and upon reconsideration in August 2008.  Tr. 85-98.  In August 2008, Bowers requested a hearing (Tr. 99-100) and, on

---

[1] Bowers previously filed disability applications in 2004 and 2005, which were both denied by initial determination. Tr. 54, 127–28.  He did not further pursue these applications.  Doc. 16, p.1.

July 17, 2009, a hearing was held before Administrative Law Judge John Kooser (the "ALJ"). Tr. 7-44.  In a decision dated September 30, 2009, the ALJ determined that Bowers was not disabled.  Tr. 51-63.  Bowers requested review of this decision by the Appeals Council and on October 28, 2010, the Appeals Counsel denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

On November 23, 2010, Bowers filed this action seeking review of the Commissioner's decision.  Doc. 1.  On May 12, 2011, Bowers filed his Brief on the Merits.  Doc. 15.  On June 27, the Commissioner filed his Brief on the Merits.  Doc. 16.

## II.  Evidence

### A. Personal and Vocational Evidence

Bowers was born on January 15, 1976, and was thirty-three (33) years old at the time of the ALJ's decision.  Tr. 12.  He attended high school through the tenth grade.  Tr. 14-15.  His past work experience included work as a packer at an aluminum company, a sandblaster at General Motors, and a general laborer with temporary employment companies.  Tr. 41.

### B. Medical Evidence

Bowers injured his right foot in a car accident in 2002.  Tr. 20.  He started receiving treatment for his right foot in August 2005 with J. Philip Davidson, D.P.M.  Tr. 217–20.  Dr. Davidson found that Bowers sustained fractures of his right foot with malunion and nonunion. Tr. 222.  On September 20, 2005, Dr. Davidson performed surgery to correct an ingrown right first toenail and remove a cyst from the sole of the right foot.  Tr. 219.  In October 2005, Dr. Davidson opined that Bowers was limited functionally in using his right leg and foot but was still healing from surgery.  Tr. 222–23.  Dr. Davidson also noted on several occasions that Bowers was not staying off his right foot as recommended.  Tr. 217, 222.

In November 2005, state reviewing agency physician Rebecca Neiger completed a Physical Residual Functional Capacity Assessment.  Tr. 224-31.  Dr. Neiger opined that Bowers could lift or carry up to 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk for about six hours in an eight-hour workday; ambulate independently despite a slow gait; and had specific postural limitations.  Tr. 225–28.

In October 2007, Dr. Davidson completed a report at the request of the state agency.  Tr. 232-36.  Dr. Davidson stated that he had only treated Bowers periodically for various mundane problems since his September 2005 surgery.  Tr. 233.  The doctor noted that, on April 18, 2007, he removed a keloid scar on Bowers' right foot and that the foot was healing well.  Tr. 233.  Dr. Davidson opined that Bowers' only limitations were with long-term standing and walking due to the scar tissue on his right foot.  Tr. 234.

Bowers underwent a consultative examination by Ravinder Nath, M.D., on November 29, 2007.  Tr. 238–43.  Dr. Nath noted that Bowers had hip surgery 20 years ago.  Tr. 238.  Dr. Nath also noted that Bowers claimed he suffered pain in his hips ever since, but did not take any pain medication.  Tr. 238.  Dr. Nath's examination revealed mostly normal range of motion and joint condition.  Tr. 239.  Dr. Nath noted that Bowers did not use any ambulatory aids, but that he occasionally used a cane for walking long distances.  Tr. 239.

In December 2007, state agency reviewing physician Maria Congbalay, M.D., completed a Physical Residual Functional Capacity Assessment.  Tr. 244–51.  She opined that Bowers could lift or carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for about six hours in an eight-hour workday; and had specific postural and environmental limitations.  Tr. 245–48.  In July 2008, state agency physician Nick Albert, M.D., affirmed Dr. Congbalay's opinion.  Tr. 295.

3

Bowers began treating with Lawrence A. DiDomenico, D.P.M., F.A.C.F.A.S., in March 2008, for issues with his right foot.  Tr. 275.  Bowers underwent osteotomy and fusion surgery on his right foot on April 28, 2008.  Tr. 258–60.  Bowers continued treating with Dr. DiDomenico after the surgery.  Tr. 265–69, 301–26.  On several occasions, Dr. DiDomenico noted that Bowers was noncompliant and "overdoing it" with respect to putting weight on his right foot.  Tr. 268, 318.  Dr. DiDomenico noted good foot alignment in June 2008.  Tr. 265.  Over the year after the surgery, Bowers frequently reported significant and steady improvement. Tr. 301-19.  For example, Bowers reported on October 23, 2008, that his foot felt solid and stable.  Tr. 309.  On July 14, 2008, Bowers stated he was doing about 100% better during the day, and that toward the night he had some inflammation and soreness.  Tr. 319.  On March 26, 2009, Bowers affirmed that physical therapy helped out and that the foot was not bothering him.  Tr. 304.  On April 2, 2009, Bowers stated he was able to wear shoes and sleep without irritation.  Tr. 303.  On April 16, 2009, Bowers reported his foot was doing very well and he was very happy.  Tr. 302.

On July 15, 2009, Bowers underwent ankle arthroscopy and arthroplasty.  Tr. 322, 323.  There is no additional evidence in the record regarding this surgery.

### C. Testimonial Evidence

#### 1. Bowers' Testimony

On July 17, 2009, Bowers appeared with counsel and testified at the administrative hearing.  Tr. 7–44.  Bowers testified that he had constant pain in his right foot as a result of injuries he sustained in an automobile accident in 2002.  Tr. 21-22.  He testified, however, that he did not take any pain medication.  Tr. 30.  Bowers also discussed his foot and ankle surgeries. Tr. 20-25.  He reported that it took him a month and a half to be able to walk after his surgery in

4

2008. Tr. 23. Bowers then stated that he underwent arthroscopic surgery on July 15, 2009 to correct a torn ligament in his ankle. Tr. 22. Bowers was instructed by his doctor not to put any pressure on his right foot for a month after the surgery. Tr. 23. He testified that he was walking without crutches prior to the July 2009 surgery. Tr. 27.

Bowers testified that his daily activities included picking things up around the house, preparing meals, and spending time at his or his girlfriend's house. Tr. 33–34. Bowers stated that his driver's license was suspended, but he believed he was capable of driving. Tr. 14. He also claimed that his pain caused him to have trouble sleeping at night and because of this, he was always extremely tired and would "nod off" during the day. Tr. 31, 36-37. Bowers testified that he could perform a job that allowed him to change positions between sitting and standing at will, if he was able to remain awake during the workday. Tr. 35–37.

## 2. Vocational Expert's Testimony

Samuel Ettleman, a vocational expert ("VE"), also testified at the hearing. Tr. 40–43. The VE noted that Bowers worked as a packer at an aluminum company (light exertional level and unskilled), a sandblaster at General Motors (light exertional level and unskilled), and a general laborer (medium exertional levels and unskilled). Tr. 41. The ALJ asked the VE whether a person could perform any of Bowers past jobs if the individual had the same vocational factors as Bowers and the following limitations: light work, alternating between sitting and standing as needed, cannot operate foot controls, no climbing, no more than occasional stooping, kneeling, crouching, and crawling, and cannot work around heights or hazardous machinery. Tr. 41. The VE responded that the person could not perform any of Bowers' past work. Tr. 41. The ALJ then asked whether there were any other jobs the individual could perform. Tr. 41. The VE answered that the individual would be able to

perform the following jobs: hand packager at the light level (185,000 jobs nationally), sorter/grader (38,000 jobs nationally), and assembler (148,000 jobs nationally). Tr. 42.

In his next hypothetical, the ALJ asked the VE to consider the same hypothetical as before but substitute sedentary work instead of light work. Tr. 42. The VE testified that an individual with the additional limitation could perform the following jobs: sales of lottery tickets (171,000 jobs nationally), hand packager at sedentary level (40,000 jobs nationally), and cashiering work (122,000 jobs nationally). Tr. 42. The ALJ then asked the VE to add to the previous hypothetical the limitation that the individual, due to lack of sleep, would nod off periodically during the day. Tr. 42. The VE testified that the individual would not be able to perform any of the previously-mentioned jobs. Tr. 42.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

6

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920 (b)-(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

### IV.  The ALJ's Decision

In his September 2009 decision, the ALJ found that Bowers had not engaged in substantial gainful activity since August 15, 2007, the alleged onset date. Tr. 56. The ALJ determined that Bowers had the following severe impairments: status post hammer toe and right foot repair and ankle arthroplasty with stabilization; osteoarthritis; entrapment; neuropathy; hypertrophic scar with recurrent keloid; hypertension; and obesity. Tr. 56. The ALJ found that Bowers did not have an impairment or combination of impairments that met or medically

equaled a listed impairment. Tr. 57. The ALJ next determined that Bowers retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) (lifting no more than 10 pounds) except that "the claimant can sit/stand as needed; he cannot operate foot controls; he cannot perform more than occasional climbing, stooping, kneeling, crouching, and crawling; and the claimant cannot work around heights or hazardous machinery." Tr. 57. The ALJ then determined that Bowers could not perform any past relevant work. Tr. 61. Finally, considering Bowers' vocational factions, RFC, and the testimony of the VE, the ALJ found that Bowers was capable of performing other work that existed in significant numbers in the national economy. Tr. 62. Thus, the ALJ concluded that Bowers was not disabled. Tr. 62.

## V. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor

resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### A. Substantial Evidence Supports the ALJ's Decision

The ALJ's determination that Bowers was capable of performing a limited range of sedentary work and was therefore not disabled is supported by substantial evidence in the record. Tr. 57–63.  Bowers' own testimony supports this determination.  Tr. 58–61.  For example, Bowers testified that he did not take pain medications on a regular basis, that he engaged in a wide range of activities of daily living, and that he walked short distances without using an ambulatory aid.  Tr. 27, 30, 33-34.

The medical source opinions and Bowers' treatment history also support the finding that Bowers could do sedentary work.  Bowers' treating physician, Dr. Davidson, concluded that he had no limitations except for long-term standing and walking due to scar tissue from the keloid on his right foot.  Tr. 234.  Dr. Neiger, a state agency reviewing physician, opined that Bowers could perform a full range of medium work, i.e., lift or carry up to 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk for about six hours in an eight-hour workday and ambulate independently despite a slow gait.  Tr. 225-28.  Dr. Congbalay, also a state agency reviewing physician, opined that Bowers could perform a range of light work subject to certain postural limitations, i.e., lift or carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for about six hours in an eight-hour workday.  Tr. 245–48.  In addition, Bowers reported to Dr. DiDomenico, his treating physician, that his foot felt solid and stable (Tr. 309), that he was feeling 100% better (Tr. 319), that therapy was helping and his foot was not bothering him (Tr. 304), that he was able to wear shoes and sleep without irritation (Tr. 303), and that his foot was doing well and he was happy with treatment (Tr. 302).

In making his RFC determination, the ALJ construed the evidence in the light most favorable to Bowers by limiting him to sedentary work with postural limitations including sitting or standing as needed and no more than occasional climbing, stooping, and kneeling.  Tr. 57.  This was more limited than either the "medium work" limitation that Dr. Neiger (Tr. 224-31) opined Bowers was capable of or the "light work" limitation found by Dr. Congbalay (Tr. 244–51).  At the hearing, the VE took the limitations in the ALJ's RFC finding into account and opined that Bowers could perform jobs that exist in significant numbers in the national economy.  Tr. 42.

1. **Evidence of Sleeping Issues Caused By Pain**

Bowers asserts that the critical factual issue in this case is whether he can do sedentary work.  Doc. 15, p. 5.  Bowers suggests he cannot because he claims to nod off frequently during the day as a result of losing sleep at night due to pain.  Doc. 15, pp. 5–8.  The ALJ stated that "the evidence of record does not support a finding that the claimant has any type of sleeping disorder <u>or</u> any type of pain that would cause him to be unable to sleep at night."  Tr. 59 (emphasis added).   Bowers seizes on the ALJ's use of the term "sleeping disorder" and argues that he did not allege a sleep disorder; rather, "his description was of fatigue, due to pain."  Doc. 15, p. 8.

Bowers argument is misplaced.  First, the ALJ did not limit his analysis to sleeping disorders but considered whether the evidence of record substantiated "any type of pain that would cause him to be unable to sleep at night."  The ALJ found a complete absence of any such evidence, with the sole exception of Bowers' own testimony.  He found Bowers' testimony not credible because it was inconsistent with Bowers' own behavior and activities and with the

10

medical evidence of record. The ALJ noted that Bowers "takes no pain medications"[2] and "engages in a wide range of activities of daily living, which are certainly consistent with the residual functional capacity for a range of sedentary work." Tr. 58. The ALJ reasoned, "[I]f the claimant had the degree of difficulty sleeping to which he testified, he would obviously have pursued some type of medication either for alleged pain (that could arguably keep him awake) or for any sleeping disorder." Tr. 58.

No doctor, whether treating, examining, or reviewing, made note of any sleeping issues, which is evidence either that Bowers did not raise the issue or that no doctor considered it serious enough to note. Because Bowers' treatment records contained no mention of sleeping problems, the reviewing doctors likewise found no such problems existed. While Bowers alleged that he had complained to a treating physician, Dr. DiDomenico, of sleep issues due to pain, the only note Dr. DiDomenico made with respect to this was that, as of April 2009, Bowers was able to sleep without irritation. Tr. 303. Moreover, the totality of the medical evidence established that Bowers recovered quickly and well from his surgeries. For example, Bowers testified it only took him a month and a half to recover from his first surgery. Tr. 23.

Bowers suggests that reports from other examining doctors, including Drs. Davidson and Nath, and reviewing doctors, including Drs. Neiger, Congbalay, and Albert, cannot be relied upon, since they "would not have asked these questions" (questions related to sleeping problems). Doc. 15, p. 8. However, even if that suggestion had merit, it does not explain why no treating physician noted a sleeping problem or why, other than his own testimony, nothing in the record supports Bowers' claim of sleeping problems due to pain. The medical evidence is all to the contrary and provides substantial evidence in support of the ALJ's finding that Bowers has

---

[2] The ALJ noted that Bowers had received periodic injections for pain, but concluded that the episodic nature of the injections indicated a lack of severity of Bowers' pain at other times. Tr. 58.

11

the Residual Functional Capacity to performing sedentary work with certain limitations spelled out in the ALJ's RFC finding.

### 2. Evidence of Listing Impairments

In his brief, Bowers also refers in passing to an allegation made in his submission to the Appeals Counsel, that his impairments meet one or more of the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.00 (musculoskeletal system). Doc. 15, p. 5. However, Bowers does not identify which specific listing or listings his impairments allegedly meet, and fails to identify any evidence that supports his argument or undermines the ALJ's finding. As a rule, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* Bowers has failed to develop this argument beyond a cursory mention of the issue in a block quote. The argument is therefore deemed waived.

Moreover, the argument is without merit. Under the third step, the ALJ found that Bowers did not meet a listed impairment because he was able to ambulate effectively within twelve months of his surgeries. Tr. 57. There is ample evidence in the record that Bowers had a long-term ability to walk effectively except when he was recovering from his surgeries, and that his recovery periods were all shorter than twelve months. Tr. 172, 216–20, 239, 300–26. Thus, the ALJ's finding that Bowers' impairments did not meet or equal a listed impairment is supported by substantial evidence.

### 3. Evidence of Bowers' Condition at the Administrative Hearing

Bowers also refers to, but does not develop, another allegation he made to the Appeals Counsel: that he "is a large obese person who appeared at the hearing who could hardly sit and stand to change position."  Doc. 15, p. 5.  Bowers merely implies that his physical condition at the hearing proves his disability, but neglects to offer any supporting arguments or explain how this shows error in the ALJ's decision.  Given Bowers' failure to develop this argument, it is deemed waived.  *McPherson*, 125 F.3d at 995–96.

On the merits, this argument is also unavailing.  The hearing transcript demonstrates that Bowers had to change position during the hearing because his foot fell asleep, not that he actually had difficulty changing positions.  Tr. 28-29.  Even assuming that Bowers did have difficulty changing positions, that does not, by itself, establish that he cannot perform any work whatsoever.  Nothing in the record suggests that Bowers could not perform the physical requirements of sedentary work.  At the time of the hearing, Bowers stated he was 5'11" and weighed 320 pounds.  Tr. 12.  He was able to ambulate for short distances without aid, but occasionally used a cane for walking long distances.  Tr. 27-28, 239.  No doctor ascribed greater limitations than light work due to his obesity, and there is no other evidence that supports greater limitations due to obesity or difficulty in changing positions.  Accordingly, Bowers' argument that his physical condition at the administrative hearing proves his disability fails.

### B.  The ALJ's Decision Fully Effectuates the Purposes of the Act

In his final argument, Bowers contends that a finding of disability would "further justice in this matter," as the Act should be "liberally construed in favor of disability."  Doc. 15, p. 9.  The fact that the Act is to be liberally construed is not an independent reason to grant Bowers benefits.  The principle of liberal construction does not change this Court's standard of review.

"In a Social Security action, a district court must accept an ALJ's factual findings if substantial evidence supports them . . . a standard of review which liberal construction of the Social Security Act, even if proper, does not alter.*"* *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996); *Foglesong v. Sec'y of Health & Human Servs.*, No. 93-5190, 1994 WL 58993, at *6 (6th Cir. Feb. 25, 1994) ("while the Social Security Act is remedial in nature and therefore should be construed to be inclusive rather than exclusive, where there is substantial evidence supporting the Secretary's decision, that decision must be upheld.").

Here, the ALJ reasonably construed the Act and supported his decision in denying disability. Indeed, after considering the objective evidence and the doctors' opinions, the ALJ found that no impairments and resulting limitations would preclude Bowers from all work and that his allegations otherwise were not fully credible. As discussed above, substantial evidence does support this determination. Accordingly, Bowers' argument that liberal construction of the Act favors a finding of disability is without merit.

## VI. Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff Andree L. Bowers' applications for DIB and SSI should be AFFIRMED.

Dated: October 7, 2011

Kathleen B. Burke
United States Magistrate Judge

14

## **OBJECTIONS**

      Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.